RAMSAY et al., Respondents, *v.* CHANDLER et al., Appellants.

Where a nuisance, by overflowing plaintiffs' mining claim by means of a dam erected by defendants, was found, the decree should have ordered such a reduction of the dam as would have prevented any overflow, from that cause, of the plaintiffs' ground; or, if necessary, an entire abatement.

And a perpetual injunction to restrain the defendants from raising their dam higher than the point designated was allowed.

Appeal from the Eleventh Judicial District.

The complaint sets forth that the plaintiffs are owners of a certain mining claim on the South Fork of American River; and, about the 1st April, 1850, had erected a dam and dug a race sufficient to carry off the water, and leave the bed of the river dry enough to work for gold and for mining purposes; and set forth title, claiming under Winters, Marshall, and others, the admitted owners, who also granted the right to plaintiffs to tear

down an old mill-dam, so as to head off the said stream above, and enable plaintiffs to work out the space occupied by the mill-pond.

That said defendants, about the 25th June, 1851, erected a dam across the said stream, below said mill, and obstructed the current, so as to throw back the water and overflow the whole claim of plaintiffs, and prevent them from working it from June 25th, 1851 to 5th July, to their damage $3000; and pray an abatement of the nuisance.

The bill further charges, that defendants are about to erect an addition upon their said dam, which if done will wholly ruin their said claim; that they (defendants) are wholly insolvent; and therefore pray for an injunction to restrain them from raising the said dam. The bill was sworn to by two of the plaintiffs; and the court granted the writ of injunction as prayed for.

The defendants first demurred to the complaint, and then answer and say, that long before the plaintiffs had purchased or established their claim, in June or July, 1850, defendants had contracted with Winters and Marshall, and others, the owners, who conveyed to defendants the right to excavate a race on the said South Fork, below Colonna, and to turn said stream from its course, and to erect a dam for that purpose at the point where the dam is at present, and to flow back the water so much as to enable them to work the bed of said river, below said dam, for gold-mining purposes; and for any injury that said mill company might sustain in consequence of the dam, defendants agreed to pay, and are bound to pay, ten per cent. of all gold mined on said claim; and defendants claim a right to flow back the water, under the said contract, as far as necessary to enable them to drain and work the bed of said river. They also claim by priority of location; and pray a dissolution of the injunction, &c.

The cause was submitted to the court without a jury.

Both parties claimed under the same company, called "The Colonna Saw-mill Company," of .which Winters and Marshall are members.

Plaintiffs proved, that in December, 1851, they purchased of said company their entire right to the mill (except the house and machinery), mill-dam, the mining claim described in the bill, the water privileges of said company, the right to tear away the

dam, to cut a race for the purpose of draining the bed of the river for mining purposes, and raising a dam at the head of the race for diverting the water, for which they paid $7500 down, and were to pay five per cent. out of all the gold taken from the said claim; and that plaintiffs took possession immediately after said purchase, and expended thereon labor and money to the amount of 40 or 50,000 dollars. To the introduction of this testimony defendants objected; the court overruled the objection, and defendants excepted.

Plaintiffs further proved, that about the 25th June, 1851, they had completed their race, and had turned the water of the river into it, by means of a dam at the head thereof, and had drained the bed for mining purposes, and were proceeding to take from said dam large quantities of gold, when the defendants erected a dam about eight feet high across the said river, and flowed the said river back on the mill-wheel to the depth of two or three feet, and on the plaintiffs' claim to the same depth, and prevented the plaintiffs from working the same; that plaintiffs had 100 men at the time, who were prevented from working by the back-water, from the 25th June until the trial, and that labor was worth from four to five dollars per day.

Defendants read in evidence certain articles of agreement, made with the mill company on the 17th June, 1850, authorizing defendants to cut a race or canal across a neck of the mill company's land, near the said mine, so as to lay bare the bed of the said river for mining purposes. That they commenced immediately after the date of the articles on the tunnel, and in November on the dam, which in March, 1851, was raised to its present height; a part of the dam was washed away, and was replaced shortly before this suit was brought, and is no higher than is necessary to turn the water into the tunnel as the same is now constructed.

Plaintiffs proved that the mill was in operation, at the time the agreement was made between the mill company and defendants, and making from six to eight hundred dollars per day.

They also proved that there was about 22 feet fall from where the water enters the tunnel to where it is discharged, the principal portion of which was at the lower end; that the tunnel could have been cut deeper some two or three feet, but at a large ex-

pense, as the floor was granite. It was also proved that the tunnel might have been made wider at the upper end, and of the same depth, without very great expense, and if enlarged either way, the water might be carried off without flooding plaintiffs' dam and pool.

The court found that defendants had trespassed on plaintiffs' rights by throwing back the water upon their mining claims to the depth of two feet, and ordered that the plaintiffs, within ten days, reduce the water to the same extent, and in the manner least injurious to defendants' dam ; and that the injunction issued be perpetual, and that defendants be forever enjoined from constructing any impediment in the river, so as to raise the water above the point to which it is directed to be reduced by this judgment.

No briefs are on file.

HEYDENFELDT, Justice, delivered the opinion of the court. WELLS, Justice, concurred.

No points have been filed in this case by the counsel on either side, and we have had to examine it without such aid.

It is a bill in chancery for the abatement of a mill-dam. In the decisions of the court upon the admission of evidence I can see no error.

The decree of the court requires a diminution of the defendants' dam to the extent of two feet. The only evidence on the question of injury shows that the plaintiffs' claim was overflowed two or three feet. The right is clearly with the plaintiffs, and and so the District Judge found. The decree should have ordered such a diminution of the defendants' erection as would have prevented any overflow, from that cause, of the plaintiffs' mining ground, or, if necessary, an entire abatement.

I do not think the decree has gone beyond what is clearly warranted by the evidence.

Judgment affirmed, with costs.