## HARVEY *et als. v.* CHILTON.

Plaintiffs owned certain mining claims and quartz lode on the banks of a stream above the mill and dam of defendant. Defendant commenced raising his dam two feet higher. Plaintiffs brought suit against defendant, alleging that the addition of two feet to defendant's dam was a nuisance, and would back the water on to plaintiffs' claims, and thus prevent them from working them, and would also destroy their water privilege for a quartz mill, which they intended to construct : *Held,* that the action was premature, and that the demurrer to the complaint, on the ground that the complaint did not state facts sufficient to constitute a cause of action, was properly sustained.

The allowance of costs rests in the discretion of the Court of original jurisdiction.

APPEAL from the District Court of the Eleventh Judicial District, County of El Dorado.

This was an action to abate a nuisance.

The complaint alleges, that plaintiffs are owners of a certain mining claim situated in the bed of the North Fork of the Cosumnes River, about sixty rods above a certain dam across said stream, belonging to defendant; and that they are also the owners of a certain other mining claim situated on the left bank of said stream, and adjacent to the first mentioned claim. That a part of said plaintiffs are the owners of a certain quartz lode situated upon the left bank of said stream, about three hundred yards above the dam of defendant. That said river claim can only be worked by taking water from said stream at some point above the same, by means of a ditch, and using the same with machinery for the purpose of draining said claim. That said bank claim can only be worked by water taken as aforesaid, with a fall from said claim sufficient to carry the tailings into said stream. That said quartz lode can only be worked by a mill situated at a certain point at the south end of said lode, the same to be run by water power obtained by means of a ditch as aforesaid. That for the purpose of obtaining water for the several objects above named, the plaintiffs, in March, 1857, commenced digging a ditch from a point about one and a-half miles above said claims, and had about a mile of the same completed at the time of the grievances hereinafter complained of. Plaintiffs further say, that all of the aforesaid operations could have been successfully carried on by them as before stated, had the defendant allowed his said dam to remain of the same height as when they were first undertaken. In June, 1857, the defendant commenced to build his dam higher than the same originally, by about two feet and a-half, and by so doing has, and will continue to back water upon said claim in the bed of said stream, so as greatly, if not entirely to impede the working of the same; and has and will continue to back said water opposite of said bank claim, so as to deprive said plaintiffs of a fall sufficient to carry off the tailings from said bank claim, and thus greatly impede, if not entirely prevent the plaintiffs from working said bank claim. Plaintiffs further say, that said increase of the height of said dam,

does and will cause the water to flow back so as to destroy the mill power of the plaintiffs, intended to be used by them in crushing their said quartz ; for they say they cannot run said mill with a less fall than fifteen feet, which fall the previous height of said dam enabled them to secure, by means of their said ditch, and that their mill privilege will be entirely destroyed, etc.   The complaint concludes with a prayer that a decree be made requiring the defendant to remove the addition to said dam.

The defendant demurred to this complaint on the ground that it did not contain facts sufficient to constitute a cause of action.   The Court below sustained the demurrer, and gave judgment for defendant for full costs, including jury fee.   Plaintiff moved to retax costs, which was denied, and he appealed to this Court.

*Sanderson & Newell* for Appellants.

Does the raising of his dam by defendant, operate as a nuisance to the property and rights of the plaintiffs ?

For the purposes of this action, the plaintiffs must be regarded as the actual owners in fee of the bed and banks of the stream, and the owners of a mill site upon which they had already taken measures, by digging a ditch, to erect a mill.   (Merced Mining Co. *v.* Fremont, 7 Cal. 130.)   The defendant then could not do any act which would operate as a nuisance to the plaintiff, in obedience to the rule of the common law, " *sic utre tuo ut alienum non lœdas.*"

In this case irreparable injury is the direct result of defendant's act, for it entirely prevents the use and employment by plaintiffs of their property.   It is such a material injury to property as a Court of Equity will prevent.   (Winstanley *v.* Lee, 2 Swanst. R. 335 ;   Attorney General *v.* Nichol, 18 Ves. 343 ;   Cherrington *v.* Abney, 2 Vern. 646 ; Nutbrown *v.* Thornton, 10 Ves. 163 ; Mohawk & Hudson Railroad Co. *v.* Artcher, 6 Paige, 83.)

The bare flooding of plaintiffs' claims is sufficient to warrant the relief. (Repka *v.* Sergeant, 7 W. & S. 1. ;   Pastorious *v.* Fisher, 1 R. 27 ; Ramsey *et. al. v.* Chandler *et al.*, 3 Cal. 90 ;   Remis *v.* Clark, 11 Picks. 452.

" Where parties have located a mining claim upon the banks of a stream, and are using the bed of the stream for the purpose of working

their claim, any subsequent erection or dam which will turn the water
and hinder their work, is an encroachment upon the rights of said
parties." (Sims *v.* Smith, 7 Cal. R. 148.)

This cause having been tried upon demurrer, the Court improperly
taxed jury fee and witnesses' fees against plaintiffs.

The costs, to say the least, were in the discretion of the Court, and
he ought not to have taxed them all against plaintiffs. (Practice Act,
sections 495, 497, 498.)

*Thos. H. Williams* for Respondent.

The first ground appellants (plaintiffs below) maintain, that the
complaint does state facts sufficient to constitute a cause of action, and
that the facts so stated warrant the relief sought.

The Court will observe by an examination of the complaint, that
immediate or *present* injury is not complained of, but when plaintiffs get
the remaining third of their ditch completed, and get ready to build a
quartz mill, and make the other necessary arrangements, by turning
the river, &c., to work the " river bed claim," and also to work the
" bank claim," *then* they expect to be injured, and have no doubt but
that their said works will be impeded.

I maintain that one who locates a piece of ground for *mining* pur-
poses only, owns it to the extent of the *right* to mine, and no further,
which *right* and the free exercise of it, no one can lawfully interfere
with. Any other doctrine would be destructive of some of the most
important interests of our mining country.

Appellants cite as authority the case of the Merced Mining Co. *v.*
Fremont, 7 Cal. R. 130, of this Court; but I think that decision
rather favors my view of the question.

Judge Burnett uses this language : " If a party leases from another
a tract of land for agricultural purposes, upon which there is a mine,
any irreparable injury to the mine would not affect *his* estate, but the
injury would be to the estate of the landlord, and the remedy in
respect to that injury must be sought by the latter. But where the
lease is of a *mine*, the case is entirely different. The injury in that
case is to the estate of the tenant, and *he* is the proper party to sue."

Showing clearly that the inquiry must be whether an injury has

been done, or is about to be done, the particular *interest* or *right* of the complainant.

Nuisance means literallly, annoyance ; in law it signifies, according to Blackstone, " anything that worketh hurt, inconvenience, or damage."

A private nuisance is " anything done to the hurt or annoyance of the lands, tenaments or hereditaments of another."    3 Black. Com. 215.

And our statute declares that " anything which is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, is a nuisance, and the subject of an action."    Wood's Dig., p. 200, art. 983.

Now, do the facts set forth in the complaint show that defendants have *injured* the *rights* or *interest* of the plaintiffs, or have obstructed the *free use* of their property ; or any other *use* which they have ever attempted to make of it ?

They cannot say that flowing the water back injured the ground or land, as it seems never to have been in any other condition than covered by water.    And they cannot charge that the gold will rust or otherwise injure.    Then, if they are unable to aver *injury* to their right, they must fall back upon the sole proposition, that we interfere with the free *use and enjoyment* of it; but that they cannot do, for according to their showing they are not prepared to use it—are not in a condition to do so, and may never be.

In this connection, I will quote from some authorities bearing upon the question under consideration.

In Van Bergen *v.* Van Bergen, 3 Johns. Ch. R., p. 27, we find the following : " The cases in which chancery has interfered by injunction to prevent or remove a nuisance, are those in which the nuisance has been erected to the prejudice or annoyance of a *right*, which the other party had long previously enjoyed."

" It must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle the party to call to his aid the jurisdiction of this Court."

" An act in its consequences slightly injurious will not support the action."    Palmer *v.* Mulligan, 3 Caine's R., p. 312.

" It is well established, that it is not every violation of the rights

of another which may be ranked under the general head of nuisance, which will authorize the interposition of the equitable powers of this Court; such interposition rests upon the principle of a clear and certain right to the enjoyment of the subject in question, and it must also be a case of *strong* and *imperious* necessity, or the right must have been previously established at law." Olmstead *v.* Loomis, 6 Barbour, 160, and cases there cited; Angell on Water Courses, sec. 412.

The authorities cited by the other side are entitled to but little weight.

In Wynstanley *v.* See, 2 Swanst., the Court refused the injunction.

Mohawk & Hudson R. R. Co. *v.* Arthur, 6 Paige, does not belong to this class of cases.

Cherrington *v.* Abney, 2 Vern. 646.    There is no such case.

Remis *v.* Clark, 11 Pick. 452, is more favorable to mine than the other side.

Nutbrown *v.* Thornton, 10 Ves. 163, was an action to restrain distress by a landlord against his tenant, and has no application.

Pastorious *v.* Fisher, 1 R. 27, and Rissha *v.* Sergeant, 7 W. & S. 1, merely establish or assert the doctrine that nominal damages may be obtained for an *injury*, however insignificant.

The two cases cited by counsel proceed upon the hypothesis that the plaintiff was the absolute owner of the land for all purposes, and therefore any flooding would be an injury or trespass.

Attorney General *v.* Nichol, 16 Ver. 342, sustains the doctrine for which I contend; and is so construed by the Court in Van Bergen *v.* Van Bergen, 3 Johns. Ch. R., p. 27.

Ramsey *et al. v.* Chandler *et al.*, 3 Cal. 90, does not help their cause. In that case the injury was direct, immediate and present. The plaintiffs had turned the river and were " proceeding to take out large quantities of gold " when defendants flooded them.

TERRY, C. J., delivered the opinion of the Court—FIELD, J., and BALDWIN, J., concurring.

In this case we think the demurrer was properly sustained.

The complaint shows no injury which has been occasioned to

plaintiff by the act complained of.   It does not appear that plaintiff had ever commenced to work the claims owned by him, or that the claims are at all injured or likely to suffer damage from the defendant's dam.   We think the action is premature.   If after the plaintiff has completed the improvements he has projected, and is prepared to prosecute his enterprise, he is hindered or obstructed by defendant, the law will afford him a remedy.

The question as to the allowance of costs rests in the discretion of the Court below, and we think there has not in this case been such an abuse of discretion as would warrant our interference.

Judgment affirmed.