| | |
|---|---|
| THE WASHINGTON UNIVERSITY OF BALTIMORE ET AL. vs. EDWARD GREEN. | SEPTEMBER TERM, 1847. |

[INJUNCTION.]

AN injunction, unless issued after the decree, when it becomes a judicial process, can only be used for the purpose of prevention and protection, and not for the purpose of commanding the defendant to undo any thing he had previously done.

The bill alleges, that the buildings on the grounds in question, were used for the purpose of giving medical instruction, and as an infirmary for the sick, by the professors composing the medical faculty of the corporation, and prays that the defendant shall be restrained from so acting as to interfere with their possession and use for that purpose; and that he be commanded to forbear from the repetition of the acts which impeded the enjoyments of the rights and the discharge of the duties on the part of the professors. HELD—

That an injunction of this description cannot be regarded as going beyond the

9

legitimate office of the process, or as possessing the character of a judicial writ.

Where the material allegations of the bill are denied by the answer, the motion to dissolve must prevail, unless the bill can be supported by testimony taken under the act of 1835, ch. 380, sec. 8.

All averments of the bill, not denied by the answer, must, upon all questions relating to the injunction, be regarded as true.

After the injunction was dissolved, the defendant filed a *petition*, stating that the complainants, in pursuance of the injunction, had taken possession of the property, to which the defendant yielded, and prays that an order may be passed, restoring the possession to the defendant. HELD—

That if the defendant has surrendered a possession previously held by him, he he has done that which the court, by its injunction, did not command him to do, and for which he has no right to ask for redress at its hands, and that the petition should be dismissed.

[The bill in this case was filed by the Washington University of Baltimore, and the surviving trustees under a deed of trust from said university, stating that said trustees and certain *cestui que trusts* under said deed, filed a bill in this court against the university and Edward Green, claiming a sale of the property conveyed by the deed, according to its provisions; and stating that Green claimed the same as purchaser under an execution against the university, recovered long after the deed of trust was executed. That subsequent to the filing of said bill, Green instituted an ejectment suit in Baltimore County Court for the recovery of said property, making Holden B. Hill, steward of the buildings of the university, defendant. That as Hill was only the nominal defendant, the trustees, as they had a right to do, interposed to defend the suit, and employed a counsel for that purpose, who was the only one engaged for the defence. That at January term, 1847, of said court, judgment by confession was entered for the plaintiff, Green, with an agreement for a stay of execution till the determination of the suit in chancery. That the property consisted of large grounds and extensive buildings, in Baltimore, used for medical instruction, and as an infirmary, and was so used when said judgment was rendered, and long before, under the direction of the faculty of said institution. That the suit in chancery had not been terminated, although complainants had tried to bring it to a close, when suddenly, on the 2d of August, 1847, Green in defiance

of his agreement—the foundation of the judgment—violently entered said buildings and drove out the professors engaged in instruction, and in tending the sick; and emboldened by the advice of counsel, he persisted in preventing them from entering, in discharge of their duties, although there was there much valuable property belonging to them and others connected with the institution.

The bill concluded with a prayer for an injunction, the nature and extent of which is set forth by the Chancellor in his opinion; and for general relief.

An injunction was immediately granted upon this bill, and afterwards the defendant filed his answer, stating, that it was true that a bill had been filed in chancery, as alleged in the present bill, and that the answers thereto had been filed, and the proceedings were then pending, although he had endeavored to bring the case to a final hearing. That he did institute an ejectment suit for said property as stated in the bill, but that the pendency of the chancery suit was no objection to its prosecution, or if it was, the defence should have been taken at law. That he purchased the property at a sheriff's sale, obtained a deed for it, and was put into possession by Hill, whom he suffered to remain on the property to take care of it and make such profits from it as circumstances would allow; Hill acknowledging himself his tenant, and agreeing to surrender the possession when required. That in April, 1845, he demanded possession of Hill, which being refused, he brought said ejectment and recovered judgment thereon; and was on the 22d of July, 1847, peaceably put in possession, by Hill, of the said grounds and premises. That as Hill waived the agreement, which he had a right to do, his so taken possession was not in violation of the terms thereof. That he denied, and ever did, the right of the corporate authorities of the institution, or of the trustees, to interfere with him in the possession of the property, forasmuch as the former confessed the judgment, upon which the sale to him was made; and as, by the terms of the deed, the latter had no right to interfere with, or control the institution, even admitting the validity of the deed, (which he did

not;) as dividends had never been declared by the corporate authorities, nor had any profits been earned. But that whilst maintaining his right to the premises, he denied obstructing the faculty or professors in tending the sick, they having been daily in attendance whilst he was in possession. That the resident professor continued to perform his duties all the time, and the sick were provided with necessaries at his (Green's) expense. That, as to his forcible entry on the 2d of August, he only took such measures as are necessary to the preservation of property in large cities. That, in his answer, filed in the other suit against him, he had exposed the invalidity of the claim of the trustees, and the answer of the said university, filed in the same case, also, opposed and denied it; although it might suit the succeeding faculty to deny the admissions of their predecessors, who were fully cognizant of the facts of the case, and to seek by union with the trustees, to benefit themselves, whilst they failed to keep down the current expenses of the institution, or to apply any thing to the repair of the property. That none of the members of the institution had sworn to the bill, and that the only one of them who had any interest in the concern refused to join in the suit. And that the title of the complainants, if any they had, was a legal one, and to be asserted at law, not in chancery.

On the coming in of this answer, a motion was made to dissolve the injunction, which was argued before the Chancellor, who delivered the following opinion :]

THE CHANCELLOR :

One of the grounds taken by the defendant against the continuance of this injunction is, that it transcends the limits usually assigned to this preventive process of the court. That the injunction in this case, instead of simply prohibiting an act to be done, injurious to the rights of the complainants, and leaving things in their then condition, passes beyond this boundary, and commands an act to be undone which had been consummated prior to the filing of the bill. Such, however, was not, nor is it now, my understanding of the extent to which

this injunction has gone. The bill alleges, that the buildings erected upon the grounds in question had been used for the purpose of giving medical instruction, and as an infirmary for the sick, and were so used through the professors composing the medical faculty of the corporation, who must necessarily have possession, and free and uninterrupted ingress and egress therefrom; and it prays that the defendant shall be restrained from so acting, as to interfere with their possession, and use for that purpose ; and that he be commanded to forbear from the repetition of acts which impeded the enjoyment of these rights, and the discharge of these duties on the part of the professors. It seems to me that an injunction of this description cannot be regarded as going beyond the legitimate office of the process, or as possessing the character of a judicial writ, which can only issue after a decree; but that, in the language of Judge Story, it is "preventive and protective merely, and not restorative." But conceding that the injunction in this case does approach very nearly to commanding a thing to be undone, authorities are not wanting to justify it even if viewed in that aspect, as appears by the cases in which parties have been commanded by injunction not thereafter to continue to cause a stream to flow irregularly, by which the plaintiff's mill had been supplied, and the current of which had been impeded by breaches made or obstructions interposed by the defendant. In cases of this description, as it is obvious the injunction could only be obeyed by repairing the breaches, or removing the obstructions, the office of the writ would appear to have been carried further than could be sanctioned, viewing it merely as prohibitory and conservative. The cases in which the writ of injunction has been thus applied, are collected in *Murdock's case*, 2 *Bland*, 471 ; see also *Eden on Injunctions*, 331.

But the injunction in this case is not put upon this ground, as I concur in the principle, that the process, unless issued after the decree, when it becomes judicial, can only be used for the purpose of prevention, and protection, and not for the

9※

purpose of commanding the defendant to undo any thing he had previously done.

The injunction then being, as I think, properly issued, and for a purpose within the fair scope and object of the power of the court to interpose for the protection of rights unjustifiably invaded, it remains to be considered, how far the grounds upon which it issued have been removed by the answer of the defendant, the rule being, that if the answer swears away or denies all the equity of the bill, the injunction must be dissolved.

The equity of this bill consisted in the alleged violation by Green, of the agreement upon which the judgment in the ejectment suit by him against Hill, was confessed, and in the imputed violence with which he drove away, and continued to exclude the professors from the enjoyment of the privileges, and the discharge of the philanthropic. and important duties with which they were charged. It appeared to me that unless the court interposed to prohibit such conduct, the defendant would not only be permitted to get a most unconscientious advantage of a judgment, against the letter and spirit of the terms upon which it was confessed, but that the most grievous and irreparable injury would be inflicted upon others, by his lawless proceedings. The *gravamen* of the bill, was the violation of the agreement as charged, and I am of opinion, if the answer denies, plainly and positively, this averment, and further denies that the defendant has in any manner obstructed or interfered with the professors in the performance of their important duties, in imparting medical knowledge, and attending upon the sick, that upon the principle which governs this court upon motions to dissolve, the injunction cannot be maintained.

Now the answer does deny that the defendant took possession in violation of his agreement, or by the use of force and violence of any description, or that he has obstructed or interfered with the professors in their attendance upon the sick at the institution ; and asserts that *during all the time that de*fendant was in possession thereof, they were in daily attendance upon the sick, who were constantly provided with the necessary and accustomed nourishment and medicines.

Looking then to the bill and answer alone, upon the responsive character of which the fate of the injunction must depend; and seeing that the material allegations of the former are denied by the answer, it would seem to follow, that the motion to dissolve must prevail, unless the bill could be supported by testimony taken according to the 8th section of the act of 1835, ch. 380. And this appears to have been the view taken at one time by the complainants themselves, who subsequently to the filing of the answer, applied for and obtained an order agreeably to the provisions of the act; and perhaps it may not be unworthy of consideration, that their neglect or failure to take evidence, after obtaining authority to do so, leads to the inference that the denials of the answer were not capable of contradiction. Prior to the passage of this act of assembly, affidavits as a general rule could not be read in opposition to the answer, though a different practice obtained in one or two excepted cases. *Eden on Injunctions*, 326.

The attention of the court, upon this motion, is confined exclusively to the injunction; which depends, in the absence of testimony under the act of assembly in reference to the allegations of the bill, upon the question, whether its averments, constituting the ground of the injunction, have been denied by the answer.

It is deemed of course premature at this time, to form or express any opinion upon the relative rights of the parties, as founded upon the deed of trust, and the judgment under which the defendant purchased. The proper time for that will come at a future period, when it will receive due consideration.

The Chancellor upon full reflection, thinks the equity upon which this injunction rests has been sworn away by the answer, and consequently that it is his duty to pass an order dissolving it, which will accordingly be done.

———

[After the dissolution of the injunction, a petition was filed by the defendant Green, the matter of which, and the grounds upon which it was resisted by the complainants, will appear from the following opinion delivered by the Chancellor:]

THE CHANCELLOR:

It (the petition) alleges that the complainants in pursuance of the injunction, entered upon, and took possession of the property mentioned in the proceedings, to which the defendant yielded, not being willing to appear even as offering any opposition to the order of the court ; and it prays, (the injunction having been dissolved,) that an order may be passed restoring the defendant to the possession of the property, so that the parties may be placed in the positions they respectively occupied when it was granted.

Upon the filing of this petition an order was passed, that the matter thereof should stand for hearing on the second of the present month, provided a copy was served on the opposite party.   This has been done, and the complainants have put in an answer in which they contend that the whole effect of the injunction has been to restrain the defendant from those proceedings, by which he interfered with the due exercise of the rights, privileges and duties which the faculty and professors of the university had been enjoying, and were required to be performed.

It has been already stated, that the injunction in this case went no further and was designed to go no further than to prohibit Green, the defendant, from preventing the professors constituting the medical faculty of the corporation, from such use of the buildings and other property, as was necessary to enable them to discharge their duties.   The bill alleged that his conduct was such that these duties could no longer be performed, and that he founded his title thus to interfere, upon his judgment in the ejectment suit, in the face of his agreement that the execution of that judgment should be stayed until the determination of the then depending chancery cause, of Conkling and others vs. the Washington Medical University, and Green, in which the relative rights of all the parties would be decided.

Green in his answer denied this statement, and averred that the professors of the university had not been interrupted by him in the performance of their duties, and that he had not taken possession of the property in violation of the agreement upon

which the judgment was confessed. And upon the faith of these denials the injunction was dissolved.

It would appear to be obvious from the answer of Green, that he meant to be understood as saying that his possession of the property, however held, was not incompatible with such use and enjoyment thereof by the professors as was indispensable to the fulfilment of their duties ; for he says, that during all the time he was in the possession, they continued in the discharge of their several duties. In this state of the case it is not very clearly perceived, what sort of possession it is to which the defendant asks to be restored. According to the theory of the answer, the possession of Green was perfectly consistent with the use of the buildings by the professors, and it was with that use alone that he was prohibited by the injunction from interfering. If he desires now a more exclusive possession, so as to interfere with, or prevent the professors from performing their duties, he asks for that, which if avowed in his answer to the bill, would have caused the injunction to be continued. It certainly cannot be tolerated, that the dissolution of an injunction shall be procured by stating that the party who procures such dissolution has done nothing and means to do nothing injurious to the rights of others, and then after succeeding, that he shall be allowed to do the very acts which he had disclaimed having done, or intending to do.

The bill in this case indulged in a strain of severe and highly colored animadversion upon the conduct of the defendant, but when this was denied by the answer, no attempt was made to prove it, though an order to take evidence passed at the instance of the complainant.

This was significant, and entitled as I thought to some consideration upon the *motion to dissolve.*

The answer stated—you have unjustly assailed me—I have been guilty of no violence, no misconduct of any sort ; nor have I, nor do I mean to interrupt you in performing your duties. Upon this the injunction was dissolved ; but after the dissolution, an application is made for the restoration of rights which the injunction was never intended to take away, and the asser-

tion of which can scarcely be reconciled with the forbearance professed in the answer.

The Chancellor is fully sensible of the inviolable force of contracts, and unless parties are entrapped in making them, or they are brought about by fraud, surprise, mistake, or accident, their obligations must be performed.

The agreement upon which the judgment in the ejectment case was rendered, appears to me to be a valid and binding engagement. The parties made it, and they must stand by it. It is true the answer says, that Hill, the defendant in that action, waived it; but the bill alleges, that this Hill was the mere servant of the corporation, and but a nominal defendant, and that the cause was conducted by counsel employed by the trustees, and that it was in fact their suit—the agreement being signed by their counsel, and the counsel of Green.

This averment of the bill not being denied by the answer, must, upon all questions relating to the injunction, be regarded as true ; and surely if true, then a waiver by Hill of the agreement, cannot be allowed to prejudice the parties by whom it was made.

If, as is intimated in the petition now under consideration, the defendant, Green, has gone further than was required by the injunction, and has not only forborne to interfere with the use and enjoyment of the property by the professors, but has actually surrendered a possession previously held by him—then he has done that which the court did not command him to do, and for which he has no right to ask for redress at its hands. It was a voluntary act on his part, and of the same character as the act of Hill, the nominal defendant in the ejectment, in waiving, as alleged, the benefit of the agreement.

The Chancellor has not fully considered, and therefore does not mean now to decide, how far this court has the power to order a restoration of possession of rights, supposing them to have been surrendered under circumstances like those attending this case. No authority for the application has been produced, and it is believed that none can be readily found.

In the light in which this application presents itself to me,

I am of opinion that I ought not to interfere in the manner asked for, and therefore the application is disallowed, and the petition will be dismissed.

[No appeal was taken from either of the orders in this case.]