NEWTON J. WHEELER, plaintiff in error, *vs.* JAMES STEELE, defendant in error.

1. Complainant charges in his bill, that the defendant has erected a dam across a stream, which causes the water to overflow complainant's land lying on the stream above this dam; that he has, at law, recovered nominal damages for the injury thereby done, and has other suits pending for the same wrong. Amongst other grounds, he also charges that defendant is preparing to erect a mill near the dam, but does not charge or show that the damage to him will thereby be increased. Besides the prayer for a decree that the proper height of the dam shall be determined and fixed, and the prayer for general relief, he asks for an injunction restraining defendant from continuing the dam at its present height, or any height that will cause the water to overflow his land, or from building a mill, or raising said dam, or doing any act that will, in any way, tend to cause the dam to continue as it now stands. The Chancellor granted an injunction, enjoining defendant from raising the dam higher, or from doing any act that will strengthen it at its present height, or make it more permanent than it now is:
*Held,* That as there is no charge in the bill, and no proof at the hearing, of an intention or threat of defendant to increase the height of the dam, and defendant made affidavit that none such existed, no necessity for the injunction on that point was shown.

2. As all the rights of the parties may be adjusted at the final hearing, and the height of the dam be fixed by a decree, so that there can be no further damage to complainant, the defendant should not, in the meantime, be disabled from protecting the dam against destruction by high water or other accidents, which is done by the injunction as granted.

Injunction. Riparian rights. Before Judge KNIGHT. Cherokee County. At Chambers. October 4th, 1873.

James Steele filed his bill in Cherokee Superior Court, alleging that he owned lots of land numbers two hundred and fifty-seven, three hundred and twenty, three hundred and twenty-seven, and three hundred and twenty-nine, that part

Wheeler *vs.* Steele.

of two hundred and fifty-six lying south and south-east of Etowah river, that part of two hundred and fifty-eight which lies on the south side of said river, and that part of number three hundred and nineteen which lies east of Little river and south of said Etowah river, all in the twenty-first district of the second section of Cherokee county; that they are bottom lands, and solely valuable for farming purposes, and lie, in part, between said rivers; that neither of said rivers is a navigable stream; that Newton J. Wheeler, in the summer and autumn of 1871, without complainant's consent, and in violation of his right to have the water in said rivers to flow as it had been accustomed naturally to flow, erected a mill-dam across said Etowah river on his, the said Wheeler's, own land, and has continued such dam up to the time of filing the bill. That said dam raised the water in said rivers and caused·it to stand thirty inches higher at the junction of the same than it did before the dam was built; that by reason thereof the water in the Etowah river was raised and caused to stand six inches higher at the upper line of lot number two hundred and fifty-six, and the water in Little river was raised and caused to stand eighteen inches higher at the upper line of lot number three hundred and twenty-nine, and eight inches at the upper line of lot number three hundred and twenty-eight; that by reason of said dam the lands of complainant were made more wet and less fit for cultivation than before it was built; that the water has backed into complainant's ditches and rendered them useless for drainage; that the dam has so raised the water as to wholly destroy a ford of complainants, and a shoal on which there had been a fish-trap, and on which complainant intended to put another, but was prevented by the dam from doing so; that the destruction of the ford causes complainant trouble, expense and delay, in going a greater distance to a bridge, and in increasing his difficulty and inconvenience in securing tenants to cultivate his land; that the dam obstructs a large quantity of green timber that had been cut down in 1872, and prevents its passage down the river, and it now lies decaying in the river, and

complainant fears it will produce sickness ; that complainant fears the mud accumulating in the river, by reason of the dam, will raise the bed thereof and render his low-lands valueless ; that pending the erection of the dam complainant notified defendant that he did not consent to or acquiesce in its erection, and that since the dam was completed he has demanded of him to so lower it as to let the water back to its former height, which he wholly refuses to do ; that he sued defendant in six or more actions at law in Cherokee Superior Court, to recover damages for the injury caused by the erection of the dam, only one of which actions has been tried, and the remainder are still pending ; that in the case that was tried, the jury found for complainant $1 00, and that, at great expense and trouble, he will have to continue to sue defendant, unless he is relieved in equity ; that his damages, though certain and permanent, are difficult of estimation, and are irreparable in money ; that complainant is informed and believes that defendant intends to erect, at an early day, a grist or wheat mill in addition to his other improvements, and is now taking steps to get the lumber for said mill.

The bill prays an injunction to restrain the defendant from continuing said dam at its present height, or any height that will cause the water in either of said rivers to stand upon complainant's property higher than before the dam was erected, and also to restrain him from building any mill, raising said dam, or doing any act that will, in any way, tend to cause said dam to continue as it now stands.

On the hearing of the motion for injunction, counsel for complainant read the bill and submitted affidavits sworn to by Erwin Wiley, Henry Steele and A. B. Durham, stating that after defendant's dam was commenced, and before it was finished, several stakes were put up by the friends of complainant, and at his instance, at the water's edge, on the river, one at the mouth of Little river, where it flows into the Etowah ; that the height of the stake was cut on a tree standing at the junction of the rivers, and that when the dam was completed, the water was raised thirty-two inches at said

Wheeler *vs.* Steele.

stake, and has continued so from that time. The affidavits also stated other facts going to corroborate the allegations of the bill.

The defendant filed his answer, and submitted twelve affidavits in support thereof. The answer admits complainant's title to the land, as charged, except as to lot number ........., so far as he knows; admits the erection of a mill-dam across Etowah river, three-quarters of a mile below the lowest line of complainant's land; denies that the dam raises the water thirty inches at the junction of the rivers, as charged; denies that the dam has raised the water in any place, as charged; denies that the dam raises the water so as to injure complainant's lands, or submerge or drown any shoal suitable for a fish-trap, or to destroy and render useless any ford on complainant's land, or to render any of his lands less fit for cultivation, or to choke up the ditches and render them less efficient drains; admits that there is timber felled in the river, but alleges that the timber was felled by complainant's tenants to prevent defendant from floating a flat-boat down the river; admits that suits were brought, and are now pending, as alleged in the bill; denies that the dam has caused mud and sand to accumulate in the bed of the rivers, or that it will have the effect which the complainant surmises; admits that he did intend to erect, and was erecting, a cotton gin on his own place, at or near the said dam, and also that, at some future day, he might erect a flouring mill; denies that complainant ever protested against the building of the dam until it was completed, but, in no event, has he ever threatened to raise the dam any higher, nor does he expect or intend so to do.

The affidavits submitted by defendant sustain his answer, and most of them were made by men who were familiar with the rivers and the land said to be affected by the dam, some of whom had been raised on the rivers, and others had known them familiarly twenty years, and all of them had made a close personal examination as to the facts to which they testified.

The Chancellor passed the following order:

Wheeler *vs.* Steele.

"That the defendant, Newton J. Wheeler, be enjoined, until the final trial of this case, from raising the dam named in the bill higher than it now tands; and that he be also enjoined from doing any act that will strengthen the dam at its present height, or make it more permanent than it now is, until the final trial of this case."

To this judgment the defendant excepted, and now assigns the same as error.

LESTER & THOMSON, for plaintiff in error.

JULIUS BROWN, for defendant.

TRIPPE, Judge.

1. The injunction was granted restraining the defendant from increasing the height of the dam. So far as it was made to appear at the hearing for the injunction, the mill-dam was completed, and there was no charge in the bill that the defendant had threatened or purposed to raise it higher. Nor was there even any affidavit showing such intention. On the contrary, the defendant denied, under oath, that any such intention existed. There was, therefore, nothing calling for the injunction on that point. If such an effort be made hereafter by the defendant, there will be time enough for complainant to move. The injunction also forbade the defendant to strengthen the dam, or to do anything to make it more permanent than it now is. This was denying to the defendant all right to protect any portion of the dam. If it be eight feet in height, it may be ascertained on the final hearing that a reduction of two or three feet may relieve complainant of the damage complained of. The prayer of the bill is not that the dam be destroyed or totally removed, but that the proper height of it shall be determined and fixed by a decree. There is also a prayer for general relief, etc. Under these prayers, complainant can obtain security against future damage, and indemnity for what has accrued to the time of trial.

2. We think the best direction to be given to the case is to

Cunningham *vs.* Clark & Company.

remit the parties to an adjustment of their rights at the final hearing, when the height of the dam can be fixed by a decree so as to prevent further damage to complainant. In the meantime, the owner of it should not be disabled from protecting it against destruction by high waters, or other accidents, as is done by the injunction granted. The defendant is not charged to be insolvent and incapable of responding to any recovery that may be obtained by complainant. It does not appear that the trespass is irreparable in damages, or that the injunction is necessary to avoid circuity and multiplicity of actions. Section 3002, New Code, provides, "where the consequences of a nuisance, about to be erected or commenced, will be irreparable in damages, etc., a Court of equity may interfere to arrest it before it is completed." So, also, by section 3219, will a trespass be restrained where the injunction is necessary for the avoidance of multiplicity of actions. Here the damages can be ascertained in the pending suit, and one trial may finally adjudicate all rights. The order of the Chancellor, as granted, would be an indirect way of abating a nuisance already existing, by injunction, by leaving it to time and accident and decay to do the work of destruction.

Judgment reversed.