1836.

Mohawk and Hudson Rail Road Co. v. Artcher.

</div>

---

### THE MOHAWK AND HUDSON RAIL ROAD COMPANY vs. ARTCHER and others.

The owner of land through which a private road or way is proposed to be laid out is entitled to a written notice, of the time and place of meeting of the jury of freeholders to determine the question as to the necessity of such road or way. But where such owner upon a verbal notice merely, appears and contests the matter before the jury, without making any objection on the ground of a want of sufficient notice, he will be deemed to have waived the objection to the regularity of the proceeding.

Neither a public, nor a private road or way can, under the provisions of the revised statutes, be laid out across the fixtures and erections upon the inclined plain of a rail road which are used for the drawing up or letting down cars, for the conveyance of merchandize or passengers.

It seems a private road, or way, laid out through the lands of an individual, cannot be opened and used, until after the damages of the owner of the land have not only been assessed but actually paid by the person for whose benefit the road or way is laid out and opened.

The court of chancery has jurisdiction to proceed by injunction where public officers, under a claim of right, are proceeding illegally and improperly, to injure or destroy the real property of an individual or a corporation, or where it is necessary to prevent a multiplicity of suits, although the defendants may be sued at law.

THIS was an application by the defendant, M. Artcher, for the dissolution of an injunction. The bill alleged that

<div align="right">April 19.</div>

the commissioners of highways of the town of Bethlehem, upon the application of the defendant, Artcher, had laid out and recorded a private road, or way, from a lot belonging to Artcher, across the ropes and fixtures of the inclined plain of the complainant's rail way near its eastern termination at the city of Albany; and that the defendants were proceeding to open and use the same, which would be wholly incompatible with the use of the inclined plane of the complainants, for the transportation of passengers and produce. The bill also alleged that no legal notice was given to the complainants of the time and place of meeting of the jury of freeholders, to determine upon the question as to the necessity of such private road. The complainants upon the filing of their bill, duly verified by the agent of the company, obtained a preliminary injunction restraining the defendants from proceeding to open or use the road thus laid out. The commissioners of highways suffered the bill to be taken as confessed, the complainants having given them notice that no relief would be claimed against them individually. By the answer of the defendant, Artcher, he insisted that the using of the private road for the purposes for which it was intended, the drawing of sand across the fixtures of the inclined plane, would not interfere in any way with the beneficial use of the plane by the complainants. He also alleged that he gave a verbal notice to one of the directors of the rail road company of the meeting of the jury, who promised to inform the agent of the company thereof; and that such agent actually attended and was heard before the jury in opposition to the laying out of the road. The defendant, Artcher, also insisted that this court had no jurisdiction of the case; that if the commissioners of highways had not exercised their discretionary powers properly in laying out the road, the appropriate remedy of the complainants was by an appeal to the judges of the county courts; and that if the commissioners had no authority, under the statute, to lay out a road across the fixtures of the inclined plane, the complainants had a perfect remedy at law, by action of trespass.

*J. V. L. Pruyn & M. T. Reynolds,* for the complainants.

*H. G. Wheaton,* for the defendant Artcher.

THE CHANCELLOR. It is too late for the complainants to urge the objection here, that they had no sufficient legal notice of the time and place of the meeting of the jury of freeholders, as it appears they had actual notice, and their agent attended and was heard before the jury in opposition to the application. I am inclined to think that the complainants were entitled to a written notice of the time and place, and of the object of the meeting of the jury, at least six days before the time appointed for such meeting, by analogy to the forty ninth section of the title of the revised statutes relative to highways and bridges. (1 *R. S.* 514.) But by appearing before the jury and contesting the right of the defendant, Artcher, to have the road laid out across the fixtures of the inclined plane, without objecting to the regularity of the notice, that objection may be considered as waived. (See *Lansing* v. *Caswell,* 4 *Paige's Rep.* 519.) The provisions of the revised statutes relative to the laying out of private roads are very imperfect ; but it is evident that it was never the intention of the legislature to authorize the opening of a private road, through the lands of one person for the benefit of another, until after the damages had not only been assessed but actually paid by the person for whose benefit such private road is laid out and opened. Indeed it may well be doubted whether the legislature has any power to authorize the taking of the property of one person for the mere purpose of increasing the value of the property of another, where the public interest will not be in any manner benefitted by the taking of such property, or by the uses to which it is to be applied. My opinion on this subject has been fully expressed, in other cases which have come before me, particularly in the recent case of *Varick* v. *Smith,* (5 *Paige's Rep.* 127.) But as there may be cases where a private road might be considered so far a public benefit as to authorize the legislature to exercise the right of *eminent domain,* on account of the benefit which the public may de-

1836.

Mohawk and
Hudson Rail
Road Co.
v.
Artcher.

rive from the opening and the use of such road, I shall not put the decision of this case upon the constitutionality of the law under which the defendants claimed the right to lay out the road across the complainants property. I shall therefore, proceed to consider the question whether the statute itself authorises the laying out either of a public or a private road across the fixtures of the complainants inclined plane.

In the case of *Lansing* v. *Caswell*, before referred to, I had occasion to give a construction to the 57th section of the article of the revised statutes relative to the laying out of public and private roads, (1 *R. S.* 514;) and I then came to the conclusion, that this section of the statute must be construed with reference to the situation and nature of the property to which the yard or fixtures on the proposed site of the road, or high way, are appurtenant. The punctuation of the last half of the 57th section, in the authorized edition of the revised statutes, has somewhat obscured the sense, by substituting semicolons, in several places, instead of the commas which were used in the original text as passed by the legislature. This section, as originally reported by the revisors, extended the prohibition to fixtures and erections of every kind, as well as to buildings. But as the object of the revisors and of the legislature was to embody in the statute the principles of the decision of the supreme court, in the case of *Clark* v. *Phelps*, (4 *Cowen's Rep.* 190,) the language of the section was altered, by confining that part of the restriction to fixtures or erections for the purposes of trade or manufactures, so as to exclude fixtures and erections of a less meritorious character. At the time the chapter of the revised statutes relative to highways, ferries and bridges, was passed, (the fall of 1827,) there were no rail roads in this state, although the charter of this company had been granted the preceding year. It is not surprising, therefore, that the terms of this section of the statute should not be found to be exactly appropriate to the kind or class of fixtures or erections to which the fixtures and machinery of an inclined plane upon a rail road most properly belong. Perhaps, in this case, where the company is authorized by its charter to transport merchandize upon its inclined planes,

the machinery erected and placed by the rail road company upon its inclined planes, for the purpose of drawing up and letting down such merchandize, as well as cars for the conveyance of passengers, may be considered as fixtures or erections for the purposes of trade ; and as within the express terms of this prohibitory section of the statute. There can be no doubt, however, that this case is clearly within the spirit and intent of the prohibition of the statute against laying out roads and highways through buildings, fixtures, or erections of a certain description, where the benefit to be derived from the laying out of the road in that particular place bears no reasonable proportion to the injury and inconvenience which will be sustained by those through whose fixtures or erections the road is laid. Although the defendant, in his answer, swears that the laying out and using of this private road, for the purpose of carting sand across the complainants' inclined plane, will not, in his opinion, interfere with the beneficial use of such inclined plane, or be any injury to the complainants, the court cannot shut its eyes to the fact, of public notoriety, that, from the manner in which the fixtures upon an inclined plane are constructed, the use of such fixtures, for the purpose of letting down and drawing up trains of freight, or passenger carriages, is wholly incompatible with a general right to cross such inclined plane with carriages, or teams, as upon a public or private road. The question to be determined in this case is, not whether the defendant intends to use his private road at such times, and in such a manner, as to interfere with the complainants' use of their inclined plane ; but whether it is lawful for the commissioners of highways to lay out and open a road across and through the complainants' fixtures on the inclined plane, which would legally authorize the public, or an individual, to cross the inclined plane at all times, and to cut down or prostrate such fixtures, to the extent of the width of such road, if they shall be found to interfere with such general right of crossing. I am satisfied that, upon a proper construction of the statute, the commissioners of highways of Bethlehem had no jurisdiction or authority to lay out a road of

any kind across or through the fixtures upon this inclined plane ; and that their proceedings are void.

Although the complainants might have lain by and permitted the defendants to open the road, and have then proceeded by suits at law to recover satisfaction for the injury, the cases of *Belknap* v. *Belknap*, (2 *John. Ch. Rep.* 463,) and *Livingston* v. *Livingston*, (6 *idem*, 497,) and the cases there referred to, show that this court has an undoubted jurisdiction to interfere by injunction, in such a case, where public officers are proceeding illegally and improperly, under a claim of right, or where the exercise of such a jurisdiction is necessary to prevent a multiplicity of suits at law.  And the present case appears to be a proper one for the exercise of such a jurisdiction, as the act complained of is not a mere trespass, but an attempt to exercise a continued right of passing across and through the complainants' fixtures upon the inclined plane, to the permanent and continued injury of their property.  The motion to dissolve the injunction must therefore be denied, with costs.