.
 
 Mr. Justice SWAYNE.
 

 This is a suit in equity. The appellant filed his bill to procure a remedy against an alleged nuisance. The Circuit Court dismissed the bill. He thereupon appealed to this Court.
 

 It appears in the case that the appellant is the owner in. fee simple of a certain parcel of land situated on the Winnipiseogee River, in the Tillage of Meredith Bridge. He owns, also, in connection with this real estate, the right to use “one-half of the water sufficient to carry wheels for operating a trip-hammer, grindstone, and bellows.” He claims under Stephen Perley, whose title is undisputed. Perley.conveyed thexland and the whole of the water-power mentioned to Daniel Tucker, by deed bearing date February 27, 1808. Tucker conveyed the same premises, on the 14th of April, 1882, to F. W. Boynton. The deed of Perley is referred to in Tucker’s deed for a description of the land and water right thereby conveyed. While the premises belonged to Tucker, the dam at Meredith Bridge was rebuilt. The amount to be paid by each of the parties interested in the water-power was fixed by arbitration. The arbitrators awarded that Tucker should.pay two-twelfths of the cost of the dam “ upon the Meredith side of the river,” and he paid accordingly.
 

 On the 29th of October, 1824, Boynton, by deed of that date, conveyed to Asa F. Parker. In this dééd the water right is thus described: “ Which said water privilege is- the- right to draw one-half of the water from the flume connected with the premises.” On the same day Asa F. Parker, by deed containing the same description of the premises) conveyed to the appellant.
 

 The Winnipiseogee river has its source in Winnipiseogee Lake, The Lake has its outlet at a place called
 
 the Weirs,
 
 six
 
 *547
 
 miles above tie Tillage of Meredith Bridge. The outlet was formerly, by a natural channel, from five to seven hundred feet in length. The water discharges itself from this channel into Long Bay — a- sheet of water about four and a half miles long, and from half a mile to a mile wide. At the foot of Long Bay the water is again discharged by a channel abouf"a thousand feet long into
 
 “
 
 Little Bay.” At the outlet from Long Bay is Lake Tillage. From Little Bay the water is discharged into Sanborton Bay, by a- channel about fifteen hundred feet in length. At the outlet of Little Bay is Meredith Tillage, where the premises of the complainant are-situated. Little Bay forms the headwater of the dam from which the appellant’s waterpower is supplied, . The water is discharged out of Sanborton Bay, at or near a place called Union Bridge, and thence pursues its course, about ten of twelve miles, to its confluence with the Pemigewasset, below which the united streams take the name of the Merrimac.Eiver. This river — receiving several affluents on its way — passes by and supplies with their water-power the manufacturing towns of Lowell and Lawrence.
 

 The dam at Meredith Bridge was built prior to 1808. There is a dam at Lake Tillage, which was built in 1829.
 

 After Perley conveyed to Tucker he cut a canal through his own land, tapping-Little Bay, above the.dam at Meredith Bridge, and discharging into the river, below the dam, at its entrance into Sanborton Bay.
 

 The defendant is a corporation, created, and clothed with its powers by acts of the Legislature of New Hampshire. Its stock is owned by the great manufacturing companies of Lowell and Lawrence, except a few shares, held for purposes of convenience, by individuals. The main object of its creation was to secure a more abundant and regular supply of Water for the mills at those places. This was to be 'accomplished by making Lake Winnipiseogee a vast reservoir pf water, to be accumulated and retained in wet weather, and .to be drawn off and passed down, the stream, as it might be needed, in dry,weather.
 

 The flow of water below the lake was thus to be equalized as far as practicable, throughout the year.
 

 
 *548
 
 With a view to this object, the defendant has bought up all the water-rights relating to the lake, and all those upon the river above, and for some distance below, Meredith Bridge. Those holding such rights at that village have been compromised with, except the appellant. The answer avers that he was offered the .same that was paid to others, and that 'he refused — seeking to extort an unreasonable and unconscionable sum.
 

 The defendants made excavations at the Weirs in 1845-6, whereby the lake can be drawn down from four to six feét lower than"was before possible.
 

 They erected a new stone dam at Lake Villaga in 1851. By means of this dam they can arrest the floty of the water so as to raise it above the intermediate descents bkck to the lake, and raise the water in the lake and retain it there.
 

 They have enlarged the Perley Canal arid increased the .flow of. water through it. This was done in 1846.
 

 ■•.In making their purchases and improvements, the defendants have expended about $300,000. All was done without any objection from the appellant.
 

 It is admitted by- the answer, that the defendants intend to make still deeper excavations at the Weirs, and that they have controlled and intend hereafter to control the waters of the lake, both by retention and discharge, so as to equalize at all times throughout the year, as far as practicable, the flow of water below the outlet of the lake.
 

 The gravamen of the appellant’s grievances is thus alleged in .this bill:
 

 “
 
 And the said defendants have thus caused a proportionate inequality in the quantity of water flowing in the river Winnipiseogee, by. the premises of your orator greater than any •inequality which naturally arose from the ordinary changes of the season, or from the ordinary fluctuations in the head of water in the said lake before the attempted regulation of the same by the said defendants — to the molestation, damage, and injury of your orator in the use and improvement of the said mill privilege and water-power aforesaid.”
 

 “
 
 And your orator further represents, that his said water-power
 
 *549
 
 is damaged to the same extent as the equality of supply of water at all seasons is disturbed.”
 

 “And that the defendants, with the intent and design to deprive your orator of his just rights, have seized upon and taken possession of the waters of the said Winnipiseogee Lake and River, to regulate and control them as aforesaid, and to use the said lake as a reservoir, out of which to supply the Merrimac River with water in time of drouth, and to use the said Winnipiseogee River as a channel through which to regulate and control such supply, whenever and as often as the supply of water in the Merrimac from other sources may fail, or become insufficient for- a motive power for the use of the manufacturing establishments situated thereon, and for the benefit, profit, and advantage of such manufacturing establishments, their owners or occupants, or parties interested therein, or some of them, and to the hurt and damage of your orator in the use, value, and capacity for improvement of his said water-power at Meredith Bridge aforesaid.”
 

 In reply to these allegations, the defendants say, "that they have, ever since said dam and excavation were made, used and occupied the same- for the purpose of giving greatér regularity and steadiness to the flow of water in said river,.and to reserve and hold back the surplus water, which would, at wet seasons and during spring freshets, have otherwise run to waste, retarding and interfering with the operation and use of the mills upon said Winnipiseogee and Merrimac Rivers, and discharging the same at such times as the same was required in consequence of the low state of the waters in said rivers for the use thereof, and that the water of said lake and bay has- been so managed and used as to be a material benefit and advantage to the mills upon said rivers.”
 

 “And the defendants deny that they have, in any manner . caused a proportional inequality 'in the quantity of water flowing in the River Winnipiseogeé, by the premises of said complainant, greater either than any inequality, which naturally arose from the ordinary changes of the seasons, or from the ordinary fluctuations in the head of water m the said. lake
 
 *550
 
 before the regulation of the same by the said defendants, to the molestation, damage, or injury of said orator, in the improvement of his said mill privilege and water-power. And said defendants further say, that said complainants’ water-power is not damaged by anything which has been done by them, the equality of the supply of water being not otherwise disturbed by them than is in this answer hereinbefore set forth, and its supply being rendered more equal at times when it was formerly scanty, and the excess of water being prevented at periods of high water, which would not aid; but would retard by backwater the operation of said complainants’ mill.”
 

 The issue between the parties is thus presented. Several, other matters of defence are set forth in the answer. The view which we have taken of the case renders it unnecessary particularly to advert to them.-
 

 .. The appellant alleges an-injury to his water-right commensurate, in extent, with the additional inequality in the flow of water in the river, which he alleges to have been caused by the works of the defendants.
 

 They deny the injury, and claim that his water-power is improved. The appellant does not state in his bill how the injury is produced, nor in what it consists. The particular nature of the injury is unexplained. He complains neither of a diminished supply of water nor of back-water. We have looked carefully into the evidence upon the subject; the result is, that we are left in-doubt upon which side lies the truth. We have failed to find those clear fact of rights upon one side, and wrong upon, the other, which are necessary to quicken into activity the powers of a Court of Equity. We forbear to pursue -this in quiry, because the case presents another ground, free from doubt upon which we prefer to rest our decision.
 

 It was urged at hearing, as an insuperable objection
 
 to the
 
 relief prayed for, that the appellant has not established- his right by an action at law. The objection was not taken by demurrer, or in- the answer. In the. Courts of the United States, 'it is regarded as jurisdictional, and may be enforced by the Court
 
 tua sponte,
 
 though not raised by the pleadings, nor suggested by
 
 *551
 
 counsel. 2 Cr., 419 ; 5 Pet., 496; 2 How., 383. The 16th section of the Judicial Act of 1789 provides, " that spits in equity shall not be sustained in either of the Courts of the. United States in any case where plain, adequate, and complete remedy can be had at law.” This is merely declaratory of the pre-existing rule, and does not apply where the remedy at law, is not “ plain, adequate, and complete,” or, in other words, where it is not “ as practical and as efficient to the ends of justice and to its prompt administration as the remedy in equity.” 3 Pet., 215. But where the remedy at law, is of this character, the party seeking redress must pursue it. In such case the adverse party has a- constitutional right to a trial by jury. 19 How., 278.
 

 The concurrent jurisdiction of Courts of Equity in cases bf private nuisance, dates back to an early period in the growth' oí the' English equity system. 1 Spence, 672. It has been greatly enlarged since the time of Lord Thurlow. 7 Vesey, 307, 308; 33 Cond. Eng. Ch. Rep. 236. It is now too firmly established to be shaken, but it is not without limitation. It is governed by the same principles which animate and control its action in other cases where its aid may be invoked against a wrongdoer. . -
 

 Many cases of private nuisance will sustain an action at law which will not justify relief in équity. 16 Vesey, 338; Story’s Eq. Jur., sec. 925.
 

 A Court of Equity will interfere when the injury by the wrongful act of the adverse party will be irreparable, as where the loss of health, the loss of trade, the destruction of the means of subsistence, or the ruin of the property must ensue. 2 Swanst., 335; 16 Vesey, 342 ; 2 Ver., 646 ; 2 Bro. C. R., 64; 10 Vesey, 163; 6 Paige, 83; Wat. Eden, 659, note.
 

 It will also give its aid to prevent oppressive and interminable ligitation, or a multiplicity of suits, or where the injury is of such a nature that it cannot be adequately compensated by damages at law, or is such, as from its continuance or permanent mischief, must occasion a constantly recurring grievance, which cannot be prevented otherwise than by an injunction. Mitf. Eq. Pl., by Jeremy, 144, 145; Jer., Eq. 300; 1 Dick. 163; 16 Ves., 342; 6 J. C. R., 46; 6 Paige, 83.
 

 
 *552
 
 A diminution of the value of the premises without irreparable injury is no ground for interference. 2 Bro. C. C. 65 ; 16, Vesey, 342; 3 M. & K., 169.
 

 Where an injunction is granted without a trial at law, it is 'hsually upon the principle of preserving the property, until, a trial- at law can be had. A strong
 
 prima facie
 
 case of right must be shown, and there must have been no improper delay. The Court will consider all the circumstances and exercise-a careful discretion. Cr. & Ph., 283.
 

 Where an injunction in such a case has been granted,,and ths complainant fails to proceed with diligence in his action at law, the injunction will be dissolved. 4 M & C., 498.
 

 A delay of three .years or more has been frequently held to be such laches as will preclude a party from relief in equity until he has vindicated his right at law. 1 Cox, 102; 2 J. C. R., 379; 3 J. C. R., 282; 6 J. C. R., 19 ; 5 Met., 8.
 

 The better opinion now is, that it is only a fact to be considered by the Chancellor, in connection with the other facts of the case, by- which his discretion is to be guided.
 
 Wood
 
 vs.
 
 Sutcliff,
 
 (8 Eng. L. & E., 217);
 
 Sprague
 
 vs.
 
 Rhodes,
 
 (4 Rhode I., 304).
 

 “Until the rights of the parties are settled at law, only a temporary injunction is issued, to prevent irreparable injury.”
 
 Irwin
 
 vs.
 
 Dixon,
 
 (9 How., 10).
 

 This jurisdiction is applied only where the right is clearly established — where no adequate compensation can be made in damages,- and where delay itself would be a wrong. 2 Swanst., 316; Angel on Wat. Courses, 475.
 

 .The case must be one “of strong and imperious necessity, or the right must have been previously established at law.” 6 Barb. S. C. R., 160; 7 Barb. S. C. R., 400; 2 J. C. R., 164; 4 B. & C., 8; 37 New H., 254; 17 Maine, 202. -The right must be clear and its violation palpable. 6 Barb. S. C. R., 160.
 

 If the evidence be conflicting and tbe injury doubtful, this extraordinary remedy will be withheld. 3 Paige, 210; 1 Cooper’s Sel. Cas., 333; 3 M. & K., 169; 5 Met., 8; 9 Gill. & J., 668; 3 J. C. R., 282; 2 Barb. Ch. R., 282; 1 Dev. Eq. R., 12.
 

 After the right has been established at law, a Court of Chan-
 
 *553
 
 eery will not,
 
 as of course,
 
 interpose by injunction. It will consider all tbe circumstances, tbe consequences of such action, and the real equity of the case. 4 Rhode I., 301; 8 E. I & E., 217; 9 E. L. & E., 104; 18 Eng. Cond., Ch. R., 436.
 

 The estate of the appellant in .the water is an easement ‘ or servitude annexed to his land. As before stated, the excavation was made at the Weirs, and the Perley canal was deepened in-1846. The stone dam was erected in 1851. The appellant brought his bill on the 18th of September, 1855. During these intervening periods, according to his own showing, he slept up op his rights. 8 E. L. & E., 223. He does not allege either danger of irreparable injury, or of protracted litigation,-or of a multiplicity of suits, as the ground upon which he seeks relief in equity. There is no warrant for such an averment. If he has been injured, his injury can be ascertained and fully repaired by damages in an action of law. A jury is the tribunal provided by law to determine the facts and to fix the amount, and ;they can best perform this duty. The fact that other proprietors have been paid bears upon, this point. 8 E. L. & E., 222, 223. The appellant can have no standing in a Court of Equity until he has laid this foundation for relief. This objection is fatal to the case. We decide nothing else.
 

 There are cases in which a Court of Equity will take juris-' diction and give a complete remedy without the previous intervention of a Court of Law. 6 Ves., 689; 1 McLean, 355 ; 39 New H., 186; 8 E. L. & E., 217 ; 4 Rhode I., 301; 4 M. & Cr., 433; 3 Hare, 593; 2 Coll., 431; 7 Hare, 221. But this case does not belong to that class.
 

 The Circuit Court committed no error in dismissing the' appellant’s bill.
 

 The decree belo
 
 w
 
 is affirmed, with costs. ,