CHIEF JUSTICE WILLIAMS
delivered the opinion oe the court.
This judgment in equity required the removal or abatement of a three-story house, built by appellant on or over an alley in the city of Lexington, and perpetually enjoined appellants from such use of the alley.
*488 This alley of ten feet seems never to have been dedicated to public use, but was reserved by the deeds of conveyance for the private use of the property-holders thereon.
The evidence, without contrariety, shows it had become a vexatious nuisance, being the depository of dead dogs, cats, etc., and used as a private place, both by night and day, for a]] who wished to do so, until the noxious scents became intolerable, when it was closed at both ends by gates, which, though it somewhat relieved, still did not abate the nuisance.
The lessees of the plaintiffs, and who were occupying their lot and premises, erected a twelve-foot plank fence across the alley to protect their business-house from the annoyance of those scents coming from the Mill-street end of the alley.
In this state of affairs all the owners of the adjoining-lots and the lessees of plaintiffs consented that appellant should build a house over said alley, and on the lot owned by it, on the “Oheapside” end. This alley for over-twenty years had not been generally used for carts or vehicles, and had only been so used on a few special occasions. It was agreed between appellant and the property-holders, save appellees, that the house should be so built as to permit passage to and from said alley through the basement' story,' and that the property-holders and their subsequent vendees should have the undisturbed right at all times of passage, and to carry the filth of said alley through said house, even to the emptying- their privies. Said house was built with a front and rear door for that purpose, and no obstruction to such free and undisturbed right of passage through the house has ever been offered by any one. Since the house was built the aforesaid uses of said alley have ceased, and the filthy *489 deposits no longer being made, the noxious scents have disappeared, the health of those occupying property on the alley has improved, and the value both of the property and the rents have increased.
All the evidence shows clearly that the right of ingress and egress, otherwise the right of easement, instead of being obstructed and injured, has been made more available and valuable, and the property enhanced in value.
Only the owners of one of the six lots fronting this alley complain, and their lessees consented to this erection after having obstructed the alley by the twelve-foot plank fence as a defense against the noxious vapors and scents engendered therein. The public, through no legal organization of city council or otherwise, complain of this house.
The property through which this alley passes originally belonged in solido to the Presbyterian Church, which subdivided it into six lots, two on the one and four on the other side, and her deeds provided that “there shall be kept open and free for the use of said party of the second part, his heirs and assigns, an alley ten feet wide between the before-mentioned parcels of ground.”
Any erection obstructing and lessening the value of this private easement and right of passage would so far have been a private nuisance as to have authorized an injunction before the erection; but if the house renders the privilege of easement more valuable, and all those interested but one consent and desire it, upon what principle can it be abated after its completion?
In Bigelow v. Hartford Bridge Company, 14 Conn. 565, the Supreme Court of Connecticut held that to authorize a court of equity to interpose its power by summary, peculiar, and extraordinary remedy of injunction, there must be not only a violation of the plaintiff’s rights, but *490 such as is or will be attended with substantial and serious damage.
In Van Winkle v. Curtis, 2 Green’s Chancery Rep. 422, the Supreme Court of New Jersey held that in cases of trespass and nuisance an injunction will not be granted unless to prevent an injury of a serious, permanent, and irreparable nature, such as can not be compensated in damages. And in Attorney-General v. New Jersey Railroad and Trans. Co., 2 Green’s Ch’y, 136, the same court héld that an injunction is a preventive remedy, and if the injury has been already done the writ can have no operation, for it can not be applied correctively to remove the injury. It is not to be used for the purpose of punishment, or to compel persons to do right, but simply to prevent them from doing wrong. This was in case of a public nuisance, but the same principle applies in other cases. As was decided in Smith v. Adams, 6 Paige’s N. Y. Ch’y R. 435, in which the defendant, by an excavation upon his own land, appropriated a portion of the water of a spring accustomed to flow across the plaintiff’s land; but the defendant had completed his acqueduct before the plaintiff attempted to restrain him, and there was no proof that the plaintiff had been injured' by the act of the defendant: held that the remedy of the plaintiff, if any, was at law for damages, and a perpetual injunction was refused. And these principles were elaborately considered and affirmed by the Supreme Court of the United States in Parker v. Winnipiseogee Lake Cotton and Woolen Company, 2 Black, 546.
It is useless to multiply authorities, for whatever may have been appellees’ rights, had they asked an injunction before this house was erected' restraining the appellant from building it, or had they shown irreparable injury, they can not now, under the evidence in this case, have *491 a perpetual injunction against its remaining. The full extent of their remedy, if any, is now by a suit at law for such injury as may have been done their property, to be compensated in damages.
"Wherefore the judgment is reversed, with directions to dismiss the petition absolutely.