HELEN S. WRIGHT, RESPONDENT, *v.* THE SYRACUSE, BINGHAMTON AND NEW YORK RAILROAD COM- PANY, APPELLANT.

*Injunction — allowed to restrain a trespass when a pecuniary compensation is inadequate or the grievances are continually recurring*

In 1853 the Syracuse and Binghamton Railroad Company, the defendant's prede cessor, obtained from one Collier, by grant, a strip of land, running from north to south, across a tract of land, then owned by the said Collier, upon which the railroad now operated by the defendant was about that time built. At a point near where the railroad crossed the north line of the said land a stream, flowing to the south-west, crossed, under said railroad track, in its natural channel through a culvert built by the company and thence upon the Collier land lying on the westerly side of the same.

Much annoyance and trouble having been occasioned to the said company by the deposit of earth, stone and other debris upon its track, which were brought down by the water in the stream in the times of high water, to such an extent as to obstruct the passage of trains and to impose great danger upon the traveling public, the defendant, in 1871, closed the said culvert and caused the water in the said stream to flow southerly in a channel made by it for that purpose along the easterly side of its track, the distance of about 300 feet, to a point at which a new culvert was built and the water turned through it upon Collier's lands, from which place the water then returned over Collier's land to the old channel. After the construction of the new culvert by defendant, in times of freshets large quantities of stone, sand and gravel were washed from the hills and brought down by the stream and deposited upon a portion of the lands lying on the west side of said railroad and belonging to the defendant, who had acquired Collier's title thereto.

Upon an appeal from a judgment, entered in this action, awarding the plaintiff a mandatory injunction requiring the defendant to restore to its original channel the stream of water at the point where it originally crossed under the said railroad, and to pay the damages sustained by the plaintiff by reason of its diversion by the defendant:

*Held,* that the judgment should be affirmed.

That the contention of the defendant that, the acts complained of being in the nature of a trespass, the plaintiff had an ample remedy at law, and that a court of equity had no cognizance of the question, could not be sustained.

That, while it may be stated, as a general proposition, that a simple trespass upon the land of another furnishes no ground for interference by a court of equity to restrain its commission, this rule does not apply where the injury is such that it is not susceptible of adequate pecuniary compensation in damages, or where it is one the continuance of which would cause a continually recurring grievance.

That as the acts of the defendant constituted a private nuisance a cause of action accrued to the plaintiff from day to day, and so long as the same was maintained and continued, and that the statute of limitations did not apply.

APPEAL from a judgment rendered at the Delaware Special Term, and entered in Broome county, awarding the plaintiff a mandatory injunction, requiring the defendant to restore to its original channel a stream of water adjudged to have been diverted by it to the injury of the plaintiff, and for damages sustained by reason thereof.

The facts are stated in the opinion.

*Louis Marshall*, for the appellant.

*John A. Collier Wright*, for the respondent.

KENNEDY, J.:

In 1830 the late John A. Collier became the owner of a tract of land comprising about 218 acres, situate north of and near the present boundary of the city of Binghamton, in the county of Broome. He continued the owner of said lands until his death, which occurred in March, 1873.

About the year 1853 the Syracuse and Binghamton Railroad Company, the defendant's predecessor, obtained from said Collier, by grant, a strip of land running across said tract north and south, upon which the railroad now operated by the defendant was about that time built. At a point near where the railroad crosses the north line of said land a stream formed in part by water from springs and in part by surface water, flowing to the south-west, crossed under said railroad track in its natural channel through a culvert built by the company, and thence upon the Collier lands, lying on the westerly side of the same, and thence on in a south-westerly direction across said land. This remained the condition until about 1871, before which time much annoyance and trouble had been occasioned the said railroad company by the deposit of earth, stone and other debris upon its track, brought down by the water in the stream in times of high water in the spring, etc. To such an extent did this occur that it obstructed the passage of trains and imposed great danger upon the traveling public. During said year 1871 the defendant, to remove this danger and the impediment thus occasioned, closed said culvert so originally built, and caused the water in said stream to flow in a channel made by it for that purpose south along the easterly side of its track and upon its lands a distance of about 300 feet, at which point a new culvert was built and the

water turned and caused to run through it upon said Collier land, entering upon the same about that distance south of the place where it naturally flowed, and was then returned to the old channel at or near that point. Usually little or no water flows through said channel, but in time of freshets large quantities of stone, sand and gravel are washed from the hills and brought down and deposited upon the land on the west side of said railroad. These lands were for many years prior to the commencement of this action used as meadow lands. Collier, by his last will, nominated Elizabeth Collier his executrix, and vested in her the power to alienate the lands of which he should die seized. This will was duly proven and letters testamentary granted to her in April, 1873.

After the construction of the new culvert by defendant, stone, gravel and sand were brought down said stream and deposited on said meadow land in case of heavy freshets. One of these occurred in 1882. At this time the title to the lands had become vested in the plaintiff by grant from the executrix of the Collier estate. By this freshet a large quantity of stone and gravel was carried upon said meadow lands, and distributed over a portion thereof, occasioning considerable damage to the premises.

This action is brought to compel the said defendant to remove the obstruction placed in the original channel of said stream at the point where it crossed under said railroad, and to restore the same so that the water shall run and flow through it, as it naturally did and was wont to do, as well, also, to recover the damage sustained by the plaintiff by reason of the premises. The contention by the defendant is that the acts complained of being in the nature of a trespass the plaintiff has an ample remedy at law to recover damages, and, therefore, that a court of equity has no cognizance of the question.

While it may be stated, as a general proposition, that a simple trespass upon the lands of another furnishes no ground for interference by a court of equity to restrain its commission, this rule does not apply where the injury is such that it is not susceptible of adequate pecuniary compensation in damages, or where it is one, the continuance of which would cause a continually recurring grievance. (High on Injunctions, § 739; *New York* v. *Mapes*, 6 Johns. Ch., 46; *Mohawk R. Co.* v. *Artcher*, 6 Paige, 83.)

A trespass, which from long continuance has grown into a nuisance,

may be enjoined to prevent multiplicity of suits. (*Adams* v. *Popham*, 76 N. Y., 410; *Mitchell* v. *Dors*, 6 Ves., 147; *Hanson* v. *Gardiner*, 7 id., 305; Wood on Nuisances, 137; *Phinizey* v. *City of Augusta*, 47 Ga., 253.) The distinction between a trespass and a nuisance consists in the former being a direct infringement of one's rights of property, while in the latter the infringement is the result of an act wrongful in itself, but only so from the consequences which may flow from it. In the one case the injury is immediate; in the other consequential, and generally results from some act committed beyond the limits of the property affected.

In this case the acts complained of, and which it is contended were committed by the defendant, were committed upon its own land. The injury sustained by the plaintiff was simply consequential. The wrong was a continuous one, and the results were or might be of frequent and continued occurrence. Within the rule suggested it is quite apparent, upon well-settled principles, that this is a case where the injured party may apply to a court of equity for relief.

The acts of the defendant, although done upon its own land and not *per se* a trespass upon the plaintiff, were, nevertheless, such that the consequences likely to result, and which did from time to time result in injury to the plaintiff, rendered them unlawful and in violation of the plaintiff's rights. It being within the power of the defendant to remedy the injury and restore the plaintiff, this court may, by a mandatory injunction, require it to undo its own illegal acts and to restore the injured party to the position he occupied before, and at the time, such illegal act was done (High on Injunctions, § 708); and this although the injury is only occasional. (*Campbell* v. *Seaman*, 63 N. Y. 568.)

No exceeding hardship will rest upon the defendant by holding it to legal responsibility in this regard. If, as suggested by the learned counsel for the appellant, the stream cannot be restored to its original channel without great danger to the property of the defendant and to the safety of the public at large, except such restoration is attended with great expense, a remedy will be found under the laws relating to that subject by which it may legally acquire the right to do the acts which, in violation of law, it has assumed to perform. The rights of property are surrounded by all

the safeguards which experience has demonstrated are necessary for their protection, and the assumption of a power on the part of individuals or corporations to invade them cannot be sanctioned, even indirectly, by any action on the part of those to whom the protection and enforcement of legal rights is committed.

It appeared upon the trial that prior to 1882, and while Elizabeth Collier was in possession of the lands in question, a similar injury occurred to her by stone, gravel and other debris being washed on said lands through the artificial channel made by the defendant; that she brought an action to recover the damages thus sustained; an issue was made thereon and the same was subsequently settled by the parties, the defendant paying her a sum of money for the damage so done, and the action was thereupon discontinued. It is urged by the appellant that this is a bar to any further action for damages, although occurring subsequent to the bringing of the first suit. It appears that the matter settled was the damage the plaintiff in that action had sustained. No right, directly or indirectly, was secured in the defendant to have the water continue to run and flow through the artificial channel created by it; it, after such settlement in this regard, was left exactly as it was before and at the time such settlement was made, so far as any subsequently occurring damages are concerned. (*Hanse* v. *Cowing*, 1 Lans., 288.)

If right in the conclusion that the acts of the defendant had become a private nuisance, then a cause of action accrued to the plaintiff from day to day, and so long as the same was maintained and continued, and the statute of limitations, either of six or ten years, which the defendant invokes for its protection, does not apply. (*Staple* v. *Spring*, 10 Mass., 74; *Mayor of Albany* v. *Cunliff*, 2 Comst., 174; *Campbell* v. *Seaman, supra*; *Reed* v. *State*, 108 N. Y., 407–414.)

It is urged by the appellant that the damages adjudged to the plaintiff are excessive and far exceed those sustained by her. An examination of the evidence upon this branch of the case seems to justify the judgment in this regard. For instance, Russel Bump, a witness called, testified: " In the spring of 1882 there was a large deposit of sand and gravel near where it broke through the fence, and it was spread more or less all over the meadows; * * *

last year I should think there was an acre or an acre and a-half that was entirely spoiled, so far as the crops were concerned, from the gravel, and there were several acres that was more or less injured. * * * I should think that eight acres of the meadow was subject to overflows from this stream in its present condition; know the value of this land; it is worth two to three hundred dollars per acre without the gravel on it; where the gravel is flooded to the depth I speak of, it is worthless so far as any producing capacity is concerned, and it injures the other more or less." Other witnesses speak upon this subject, and each makes the damage considerable. We do not think we should be justified in concluding that the trial judge seriously erred in respect to the damages sustained by the plaintiff.

Judgment is, therefore, affirmed, with costs.

HARDIN, P. J., and FOLLETT, J., concurred.

Judgment affirmed, with costs.