Board of Education of Twiggs Co. *v.* McRee *et al.*

There was no abuse of discretion in denying the interlocutory injunction prayed for.        *Judgment affirmed.*

December 28, 1891.

Injunction. Schools. Before Judge Roberts. Twiggs county. At chambers, July 10, 1891.

The exception is to the denial of an injunction restraining the defendants from further using or interfering with the school-house and lot known as Auburn Institute, of which they were in possession and to which the Board of Education of Twiggs county, plaintiffs, claim title and the right of use and occupation. The petition, presented on June 20, 1891, alleges that defendant McRee, with the co-operation, direction and advice of the other defendants, took possession of the school building on or about January 5, 1891, and has since kept it locked when not in actual possession; that many years before the organization of the board of education in 1872, the property was dedicated to the public use and used as a common school for the Jeffersonville district; that the board upon its organization adopted the militia districts of the county as the sub-school districts; that by virtue of the act of the legislature of 1872, the care, custody and title of the property was vested in the board, which took possession of the property and used it for public school purposes until January, 1891, when the defendants unlawfully took possession, in consequence of which the plaintiffs have no suitable and appropriate place in that sub-district in which to maintain the public school, but have been forced to use the county court-house for that purpose, to the inconvenience of the public and annoyance of the school; that the defendants threaten and avow their intention of continuing the use of the school building to

the exclusion of plaintiffs, and of any school-teacher ap-
pointed by the proper authorities to teach the public
school in that sub-district; and that if they are allowed
to continue the use of the building, it will put plain-
tiffs to annoyance and inconvenience in maintaining a
public school for that sub-district, "and if the county
authorities should object or refuse to allow the court-
house used, would practically break up and discontinue
the public school in said sub-district, and hinder and
prevent petitioners in the discharge. of their public du-
ties enjoined upon them by law."

McRee and the other four defendants named in the
petition, and two others who claimed to be members of
the Board of Trustees of Auburn Institute and asked
to be made parties defendant, answered as follows: De-
fendants and those under whom they hold have been in
quiet, peaceable, uninterrupted, notorious, continuous
and adverse possession of Auburn Institute for more
than twenty years, and during that time they have pro-
cured every teacher, placed them in possession of the
school building, expended large amounts of money from
their individual funds, furnished labor and material in
repairing the building, exercised openly and adversely
every act indicating ownership, without objection by
the plaintiffs or any one else until January, 1891. They
deny each and every material allegation in the petition.
McRee was by them elected and placed in possession of
the building in January, 1889, has from time to time
been re-elected by the board of trustees, and has held
quiet, peaceable, notorious, uninterrupted, continuous
and adverse possession of the building from January,
1888, to the present, his right to do so never having
been questioned until the filing of the petition of the
Jeffersonville Land Company *et al. v.* J. E. McRee *et al.*,
in which petition the present plaintiffs joined, and after
hearing which the injunction prayed for was refused by

Judge MILLER of the Macon circuit. Auburn Institute was never devoted or dedicated to the public use; the county board of education never acquired title thereto, never possessed or occupied it and never expended any funds in repairs and maintenance, or did any other act indicating ownership. For more than twenty years no public school free to all who might attend within the age of those entitled to the benefit of the free school fund, has ever been taught in Auburn Institute until 1890, when a four months public or free school was taught by defendant McRee in connection with the high school, by special agreement and consent of the trustees of Auburn Institute. By reason of the failure and refusal of the plaintiffs to comply with their contract with him and pay their teacher for the services rendered, McRee lost his time and money, and refused to make a contract to teach a free school in the institute during 1891, unless the plaintiffs would guarantee a faithful performance of their contract and pay him the amount contracted for, which they refused to do. For many years defendants have permitted their teachers to make supplementary contracts with the county school commissioners so as to avail themselves of what amount the public fund might pay, which amounts when paid were prorated, and each child entitled to participate in the benefit of the free school fund was credited with its *pro rata* share on its general tuition bill. For more than twenty years regular rates of tuition fixed by the trustees of the institute have been charged to all sending children thereto, and this rule has not been deviated from except in 1890, which resulted so disastrously to the financial condition of teacher McRee. This method is the only way by which any of plaintiffs or any patron has ever availed himself of the benefit of the free school fund through Auburn Institute. "While these defendants claim the right to entirely exclude plaintiffs, they

are perfectly willing for their teacher to teach a free school in connection with the high school or academic department in Auburn Institute, provided plaintiffs will make a fair and reasonable contract with their teacher and properly secure him and guarantee the payment of the amount contracted for and when due. Defendants have no desire to obstruct the operation of the public school system, but to the contrary have a lively interest therein and are well wishers to the success thereof, and outside of the conscientious discharge of their duty as trustees of Auburn Institute, stand ready and willing, at any time within their power, to do anything consistent that will contribute to the upbuilding and successful operation of the public school system." Two of the plaintiffs, McCoy and Hatcher, before their election as members of the board of education, were duly elected members of the board of trustees of Auburn Institute, and have never resigned as such ; each of them accepted the trust and from time to time met with the trustees in the election of teachers and the transaction of other business incumbent on them, and so continued until a short time before the filing of the first petition for injunction against these defendants in 1891. McCoy and Hatcher should not be permitted to maintain an action which, if successful, must convict them of having wilfully and fraudulently deceived and imposed on the public for the years during which they were acting as trustees ; nor should they be permitted to question the title of the trustees or cast a cloud thereon, and defendants pray that their names as parties plaintiff be stricken. In 1891 a petition for injunction against these defendants was filed by the Jeffersonville Land Company, in which the present plaintiffs, the board of education, joined, and in which the plaintiffs claimed title to the institute. They totally failed to show title in themselves or any right of possession or occupancy, and after

the hearing before Judge MILLER he refused the injunction prayed for. This is virtually the same case, and plaintiffs persist in these annoying, unjust and unreasonable litigations simply for the purpose of forcing a compromise, or so to frighten and annoy the patrons of the institute as to cause them to withdraw their patronage from it, thereby breaking it down. Plaintiffs are unable to respond in damages, etc.

At the hearing the affidavits for the plaintiffs tended to show the following facts : Auburn Institute has always been used as a common-school house for the benefit of the general public, and has never been used for private gain, either by the Jeffersonville Land Company or any one else. In 1868 a quorum of the trustees was in charge of the building under the Jeffersonville Land Company, but no minutes of the trustees were kept after 1857. In 1868 the person who taught in the building received the entire emoluments of the school, and no one claimed or asked any compensation or benefit for the use of the building by him. In 1869 Dupree, one of the old trustees, died leaving less than a quorum, after which the school was operated by teachers who were invited to take it by the patrons, which condition of affairs continued until 1872. Before that year, when the building needed repairs they were made by general contribution from the citizens of the community, sometimes privately and sometimes by means of festivals and entertainments got up by the young people. When the public board of education for the county was organized the institute was regarded by the whole community as public property. That board took charge of the school property and for each and every year thereafter until 1891 had the public free school term taught in building and paid over to the teachers the *pro rata* of the public school fund which was due to the free school of the Jeffersonville sub-district in which the institute is situated. From

1868 to 1882 there was no board of trustees acting by appointment under the Jeffersonville Land Company or otherwise, nor any person or persons who claimed or pretended to assume any right, privilege or authority to control, manage or direct the operation of schools in the institute, other than that of a citizen of the community or patron of the school ; it was managed by the patrons and citizens as such, and the teachers were employed by them as such. From 1872 to 1882, the teachers were appointed by the public board of education without aid or direction from any one, except such suggestions as they were disposed to accept from the patrons of the school. After Dupree died in 1869, the two trustees who survived him, Wimberly and Chapman, ever afterwards failed and refused to act as such, leaving the school-house with the public; who took charge of it and controlled its management as above stated. The school-house was taken possession of in 1872 by the county board of education, who held it, contracting with teachers to teach the school from time to time as became necessary from 1872 until 1891, when the school-house was taken possession of by defendants Carswell, Chapman and McNair, who in a pretended capacity placed defendant McRee as teacher in possession of the building, purposely to carry on a private school to the exclusion of the public. There is no fit or suitable place or building to conduct the public school in the Jeffersonville district, except Auburn Institute. In 1882 a meeting of a few citizens was held in Jeffersonville, when five persons were selected as trustees of the Jeffersonville school. No authority was given them to add any more to their number or to fill vacancies, and no vacancies have occurred, but some of the five so elected do not concur in the course the others have pursued in reference to the school during 1891. The trustees so elected have no title whatever to the property, nor did any of the citi-

zens present at the meeting claim any private property
interest in the building or grounds. There never was a
time but in which the building has been used to main-
tain a school for the benefit of the general public, until
January 5, 1891, when the defendants took possession
of it and excluded the public as well as the board of
education. From 1851 to 1869 the school was under
the management of a board of trustees appointed by the
Jeffersonville Land Company for the purpose of carry-
ing out the object for which the institute was founded.
Prior to 1872 there was no such thing known as a board
of trustees of the Auburn Institute. In that year a dis-
pute arose as to who should teach school in the building,
and a few citizens met at the court-house and elected
the five trustees above mentioned, each of whom are
still in life and holding under the election. The meet-
ing was called by an anonymous notice posted. One
citizen seeking to cast his ballot was prevented by de-
fendant Carswell, on the ground that he was not mar-
ried. He would have voted against Carswell. Another
citizen, who like himself had no children, was allowed
to vote and cast his ballot for Carswell. During the
time the school was under the management of the trus-
tees appointed by the Jeffersonville Land Company, it
was not maintained as a private enterprise and the com-
pany did not receive or ask any benefit or gain from
the operation of the school, nor did it contribute any-
thing for repairs or keeping the building. All repairs
were made as already stated, and the emoluments of the
school all went to the teachers for their services. On
March 31, 1886, a contract was executed by the county
school commissioner in behalf of the board, and by one
Napier, teacher, by which the board of education of the
county promised to pay to Napier out of the public
school fund for teaching a public school for white chil-
dren in Jeffersonville sub-district for three months of

1886, $75 per month, " a part to be paid as herein provided and the remainder by his patrons," this contract to be of full force whenever Napier should exhibit to the county school commissioner a supplemental contract. Another contract to the same effect between the same parties and for the year 1887, was executed on January 31, 1887. On January 20, 1890, the county school commissioner and defendant McRee made the same contract for 1890, except that it contained the provisions that McRee agreed to teach the school entirely free to all children entitled to benefit of the public school fund, and the stipulated salary was $90 per month. On the trial of the application for injunction by the Jeffersonville Land Company *et al. v.* McRee *et al.,* the rights of the plaintiffs in the present case were not passed on ; Judge Miller distinctly ruled that the public board of education were not party to said suit. The minutes of the public board of education show appointment of a teacher for Auburn Institute for each and every year from 1873 to 1890 inclusive, and the payment to such teachers a *pro rata* of the public school fund for each of those years. By act of 1837 the Jeffersonville Land Company was incorporated ; the act being introduced for the purpose of showing the object of incorporation was to build a town and erect a school.

The defendants introduced an affidavit showing that in 1873 and 1874 the deponent patronized Auburn Institute as a private or high school and paid regular rates of tuition, and now does so; and that he has known it for years, and if it has ever been used for free school purposes entirely, he does not know of the fact. Also an affidavit stating that the deponent was principal of Auburn Institute for the years 1873 to 1878 inclusive, and during those years taught the school as a private or high school; that he was never elected principal of the institute by the public board of education, or placed in

possession of the building by them; that in the management and direction of the institute he in no wise held himself amenable to said board, and said board never during those years attempted to exercise any management or control of the school or school building, and never claimed to deponent to have any right to do so; and that no public or free school was taught in Auburn Institute during the time deponent was principal, but so as to avail himself of what amount the public fund might pay, he made supplemental contracts with the county school commissioner and gave credit to each patron entitled, on his general tuition bill, for his *pro rata* share of the public funds paid to deponent by the commissioner. McRee made affidavit that in January, 1889, he was placed in possession of the institute as principal by the board of trustees, composed of the other defendants and those who subsequently refused to act as trustees; that he has been in quiet, peaceable, uninterrupted, notorious, continuous and adverse possession of the institute from that date to the present, the present plaintiffs never attempting to interfere until a few weeks before the time of the filing of the petition for injunction by the Jeffersonville Land Company *et al. v.* McRee *et al.*, in which the public board of education joined; that McCoy and Hatcher were frequently present and freely took part in meetings of the board of trustees; that deponent has never been elected or appointed by the public board of education, but as principal of the institute he has made supplemental contracts with the county school commissioner so as to avail himself of what amounts the public fund might pay, and such contracts were made only by the advice and permission of the trustees; that since the service of this suit one of the board of education whose name appears as one of the plaintiffs, told deponent that he was present at the last meeting of the board, and that the action against defendants was not

ordered or authorized by the board of education; and that when deponent asked him for an affidavit stating those facts, he declined to give it for the reason that he did not want to have anything to do with it.

L. D. Moore, for plaintiffs, cited Code, §1258; Acts 1887, pp. 71, 72, 73, 79; 12 *Ga.* 239; 45 *Ga.* 342; 68 *Ga.* 457; High Inj. 3d ed. §§320, 328, 1269, 1308-9; 73 Penn. St. 39, s. c. 13 Am. Rep. 726; 35 O. St. 143 6 Paige, 83, 262.

No appearance for defendants.