BROGDEX CO. et al. v. FOOD MACHIN-
ERY CORPORATION.

No. 1114.

District Court, D. Delaware.
Sept. 8, 1936.

William G. Mahaffy, of Wilmington, Del., and Roy F. Steward and Clarence O. McKay (of Steward & McKay), both of New York City, for plaintiffs.

Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., and Roland C. Foerster, of San Francisco, Cal., and Lyon & Lyon, of Los Angeles, Cal., for defendant.

NIELDS, District Judge.

Motion to dismiss bill of complaint praying for an injunction and an accounting. One ground assigned to sustain the motion to dismiss is the absence of Florida Brogdex Distributors, Inc., an indispensable party to the suit.

In 1934 the plaintiff Brogdex Company, a Florida corporation, was the holder of numerous patents covering processes and apparatus for covering citrus fruit with a protective coating of wax. In that year the defendant Food Machinery Corporation was the holder of patents covering processes and apparatus for coloring citrus fruit and had granted to Florida Brogdex Distributors, Inc., a license un-

der its patents to artificially color Florida citrus fruit.

In the bill of complaint it is averred that on October 30, 1934 (July 26, 1934), Brogdex Company granted an exclusive license to Bronson C. Skinner to make, use, and sell processes and apparatus for treating citrus fruit with a solution of borax or other chemical for the purpose of preventing blue mold and to apply to the fruit a wax coating of paraffin wax or carnauba wax, or a mixture of both, to prevent decay. In this license Skinner "agrees that he will, upon the request of the company made to him in writing, at any time prior to June 30, 1935, assign, transfer and convey this contract, and all his right, title and interest therein or arising out of it, to said Florida Brogdex Distributors, Inc. without compensation from it or from the Company for such assignment, transfer and conveyance." · Thereafter the licensee, Skinner, assigned, transferred, and conveyed to Florida Brogdex Distributors, Inc., all his right, title, and interest as provided in said license. Thereupon Florida Brogdex Distributors, Inc., became the sole and exclusive licensee of Brogdex Company in place and in lieu of Bronson C. Skinner.

On September 11, 1934, David R. Faries, for the plaintiff Brogdex Company, wrote a letter to Bronson C. Skinner representing Florida Brogdex Distributors, Inc., reciting said license and the assignment thereof to Distributors, and further reciting that defendant had granted Distributors "a license to use any and all of its patents, patent applications and rights owned or controlled by it or under which it has any license or right in any way pertaining to the coloring of citrus fruits."

This letter further granted to defendant a license in the following words: "It is understood and agreed that Food Machinery Corporation shall likewise have the right to license Food Machinery Corporation, Florida Division, but no other licensee, to sub-license the use of its color and cold wax with mold inhibiting agent patents, patent applications and rights in Florida and in the other areas covered by the license agreement of July 26, 1934, between us. This license to Food Machinery Corporation, Florida Division, however, shall authorize it to give such sub-licenses only in cases where Florida Brogdex Distributors, Inc., shall have attempted in good faith and shall have failed to license such sub-licensees to use the coloring processes, patents, patent applications and rights in connection with Brogdex. It is agreed, however, that fifteen days after Food Machinery Corporation, Florida Division, submits names of prospective sub-licensees to Florida Brogdex Distributors, Inc. shall be deemed sufficient time for such solicitation and thereafter Food Machinery Corporation, Florida Division, shall be free to solicit such sub-licensees. Upon securing contract from sub-licensees for use of its color and/or mold inhibiting cold wax for use on oranges, Food Machinery Corporation, Florida Division, must charge not less than one cent (1¢) per standard packed box for all grape fruit and/or uncolored oranges treated with said mold inhibiting cold wax. Food Machinery Corporation and Food Machinery Corporation, Florida Division, shall further agree that neither they, or any sub-licensee of theirs shall license more than two persons, firms, or corporations in Florida or any of the areas described in your license agreement with us dated July 26, 1934 to · use the process commonly known as hypochlor; nor to license its use or any cold wax process except in connection with the coloring process, nor until Florida Brogdex Distributors, Inc. shall have attempted and been unable to secure a contract with such sub-licensee to use both the color process and Brogdex as above outlined."

October 30, 1934 defendant wrote a letter to plaintiff as follows: "In response to a letter from Mr. David R. Faries this is to advise you that the terms of your letter to Mr. B. C. Skinner dated September 11, 1934, copy of which was enclosed with your letter of September 27, 1934, are satisfactory to us."

The bill further avers: On October 30, 1934, the parties began to operate under the above license agreements. For a time defendant performed its obligations thereunder. In November, 1934, plaintiffs were informed that defendant was disregarding the limitations of its license by licensing and installing for citrus fruit packers in Florida a method and apparatus for applying waxy material to oranges and grapefruit with the aid of heat and was using in connection therewith a mold-inhibiting treatment of the fruit with a solution of borax; and further was using, or causing to be used, in connection therewith a mixture of paraffin wax and carnauba wax in violation of said agreements. Plaintiff further charges that defendant is now making, selling, using, advertising,

and offering for sale a license to citrus fruit packers in Florida covering methods, apparatus, and equipment for the treatment of oranges and grapefruit, in violation of the limitations of said license agreement, and is unlawfully encouraging and assisting said packers in the use of such methods, apparatus, and equipment. Plaintiffs further aver that defendant is violating its agreements by omitting and refusing to submit in advance to Florida Brogdex Distributors, Inc., the names of packers whom defendant proposes to solicit to use the cold wax apparatus and coloring process and has taken steps, in certain instances where Florida Brogdex Distributors, Inc., had already reached an understanding with fruit packers whereby the latter are to take sublicenses to apply wax with the aid of heat, to intervene and induce said packers not to sign formal sublicense agreements with Florida Brogdex Distributors, Inc., but, instead, to sign agreements with defendant, and that defendant has succeeded in thereby wrongfully diverting large profits and gains from plaintiffs; and in order to gain such unfair advantage defendant has offered, and is continuing to offer, special inducements to packers including the furnishing of machinery free of cost. All in violation of said license agreements between the parties which contemplate fair competition between Florida Brogdex Distributors, Inc. and defendant based fairly on the relative merits of wax application with the aid of heat by Florida Brogdex Distributors, Inc., and the application of cold wax without heat by defendant.

The bill further avers: That although defendant obtains far better results in applying wax with the aid of heat in violation of its license agreements than it could obtain if it used cold wax in conformity with said agreements, nevertheless it fails to 'provide the fruit of its customers with a waxy protective coating of as high degree of excellence as the coating which sublicensees of Florida Brogdex Distributors, Inc., regularly obtain; that in spite of this inferiority defendant misrepresents its application of wax with heat to be equally effective with that of Florida Brogdex Distributors, Inc., which is contrary to the fact; and, further, that the good will attached to the trade-name "Brogdex" is thereby injured.

■ On a hearing upon a motion to dismiss the bill of complaint, the facts above recited are assumed to be true. It clearly appears that Florida Brogdex Distributors, Inc., is the exclusive licensee under the patents of Brogdex Company to make, use, and sell the process and apparatus of those patents. The rights alleged to be violated by defendant are the rights of Florida Brogdex Distributors, Inc., and the damages occasioned by defendant's violation of said license agreements are damages to Florida Brogdex Distributors, Inc. In reality Florida Brogdex Distributors, Inc., is the substantial party plaintiff. The only interest of Brogdex Company is the receipt of royalties from Florida Brogdex Distributors, Inc. The diminution of such royalties is the result of defendant's conduct.

■ An exclusive licensee is an indispensable party in such a suit. The general equitable principle is that a court of equity cannot make a final decree in the absence of an indispensable party, indispensable in the sense that no decree can be made on the merits of the question that will not necessarily and inevitably affect the interests of said party.

An early instance of the application of this rule and a leading case repeatedly cited and followed is Shields v. Barrow, 17 How. (58 U.S.) 130, 139, 15 L.Ed. 158. In that case the Supreme Court pointed out as indispensable parties: "Persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. * * * We do not say that no case can arise in which this may be done; but it must be a case in which the rights of those before the court are completely separable from the rights of those absent, otherwise the latter are indispensable parties."

In Mallow v. Hinde, 12 Wheat. 193, 198, 6 L.Ed. 599, the court affirmed the dismissal of the bill for lack of indispensable parties defendant. It said:

"In this case, the complainants have no rights separable from, and independent of, the rights of persons not made parties. The rights of those not before the court lie at the very foundation of the claim of right by the plaintiffs, and a final decision cannot be made between the parties litigant, without directly affecting and

prejudicing the rights of others, not made parties.

"We do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever may be their structure as to jurisdiction. We put it on the ground, that no court can adjudicate directly upon a person's right, without the party being either actually or constructively before the court."

In Minnesota v. Northern Securities Co., 184 U.S. 199, 235, 22 S.Ct. 308, 322, 46 L.Ed. 499, the court said: "The established practice of courts of equity to dismiss the plaintiff's bill if it appears that to grant the relief prayed for would injuriously affect persons materially interested in the subject-matter who are not made parties to the suit is founded upon clear reasons, and may be enforced by the court, sua sponte, though not raised by the pleadings or suggested by the counsel. Shields v. Barrow, 17 How. 130, 15 L.Ed. 158; Hipp v. Babin, 19 How. 271, 278, 15 L.Ed. 633, 635; Parker v. Winnipiseogee Lake Cotton & Woolen Co., 2 Black, 545, 17 L.Ed. 333."

The bill of complaint must be dismissed.